FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

DEC 0 8 2011

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA and THE STATE OF GEORGIA *ex rel.* Mark F. Baucom, M.D. | : | Civil Action No: |
|  | : |  |
|  | : | **1:11-cv-4260** |
| Plaintiffs, | : | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. §3730(b)(2)** |
| v. | : |  |
|  | : | **DO NOT PLACE IN PRESS BOX** |
| Family Dermatology, P.C., Databased Inc., Paula Nelson, M.D. and Yinka Adesokan, | : |  |
|  | : | **DO NOT ENTER ON PACER** |
| Defendants. | : |  |
|  | : | **JURY TRIAL DEMANDED** |

_____/

## FALSE CLAIMS ACT COMPLAINT
## <u>AND DEMAND FOR JURY TRIAL</u>

### FILING UNDER SEAL

1.     Under the Federal False Claims Act and Georgia State False Medicaid Claims Act, this Complaint is to be filed in camera and remain under seal for a period of at least sixty (60) days and shall not be served on defendants until the Court so orders.  The government may elect to intervene and proceed with the action within sixty (60) days after it receives the Complaint.

## INTRODUCTION

2.     This case is based on an illegal business model formulated by Defendant Family Dermatology, P.C. ("Family Derm"), its owner Dr. Paula Nelson, and her husband Yinka Adesokan, which has resulted in paying kickbacks to dermatologists for referring dermatologic pathology lab services to Defendants' lab, and for tracking those referrals, in part through the Defendants' other entity, Databased Inc. ("Databased"), which resulted in false claims being submitted by defendants for reimbursement by state and federal health care programs.

3.     Plaintiff Mark F. Baucom, M.D. ("Relator"), owner of Georgia Dermatologic Surgery Centers, P.C. ("GDSC)", became aware of the scheme when Adesokan inquired about purchasing Relator's practice, employing relator as a dermatologist and then explained how the referral scheme would operate.

4.     Defendants' business models violate federal healthcare laws and the requirements for Medicare and Medicaid reimbursement.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this case pursuant to 31 U.S.C. §3730(b), which allows a private person to bring suit for a violation of the False Claims Act; pursuant to 28 U.S.C. §1345, which provides the District Courts with original jurisdiction over all civil actions commenced by the United States of America; and pursuant to 28 U.S.C. §1331, because this action arises under the

2

laws of the United States.

6.      The acts proscribed by 31 U.S.C. §3729 et seq. and complained of herein were performed by the defendants, who transact business and/or reside in this district.  Therefore, this Court has personal jurisdiction over defendants, and venue is proper in this district, pursuant to 31 U.S.C. §3732(a).

7.      Venue is also proper in this District pursuant to 28 U.S.C. §1391(b) and (c), because the defendants are subject to personal jurisdiction in this District and transact business in this District.

8.      The Georgia State False Medicaid Claims Act claims are filed pendant to the federal claims filed herein and pursuant to Ga. Code Ann. §§ 49-4-168 *et seq.*

## **PARTIES**

9.      Relator Mark F. Baucom, M.D. is a doctor licensed in Georgia who provides dermatologic surgery services at three locations in the Atlanta metropolitan area with his principal place of business in Atlanta, Georgia.  Relator is an "original source" of this information within the meaning of 31 U.S.C. §3730(e)(4)(B).

10.     Defendant Family Derm is a corporation formed in Georgia that has dermatology practices and providers in nine states.  Its principal place of business is in Lilburn, Georgia.

3

11.   Upon information and belief, Family Derm performs dermatology pathology laboratory services under the name Nelson Dermatopathology & Laboratory located in Atlanta, Georgia.

12.   Databased is a corporation formed in Georgia that provides electronic medical record software to dermatology practices.  Its principal place of business is in Atlanta, Georgia.

13.   Defendant Paula Nelson, M.D. is a licensed dermatologist and the owner and Chief Executive Officer of Family Derm.  She is a resident of Georgia.

14.   Defendant Yinka Adesokan is Dr. Nelson's husband and the Chief Financial Officer and Secretary of Family Derm and owner of Databased.  He is a resident of Georgia.

## SUMMARY OF ILLEGAL ACTIVITIES

15.   Family Derm's business model has been to purchase established dermatology practices from physician owners.

16.   Family Derm then employs the former owners as independent contractors to run the office that was purchased.

17.   According to Family Derm's website, it has operations in nine states that include 53 separate dermatology practices and 83 providers.

18.   In October 2006, Defendant Yinka Adesokan approached Relator about selling GDSC to Family Derm and Relator then becoming an employee of

4

Family Derm.

19.     Relator's practice, GDSC, is a full service dermatologic surgery practice with three locations in metro-Atlanta, which specializes in Mohs micrographic surgery, melanoma excisions, advanced reconstruction and cosmetic dermatologic surgery.

20.     Defendant Adesokan was trying to hire Relator as an "in house" Mohs surgeon for Family Derm, and he indicated to Relator that Relator would receive a "better deal" than Defendant Adesokan offered other Mohs surgeons.

21.     When Relator inquired into the specifics of Family Derm's compensation system, Defendant Adesokan informed Relator that he paid various dermatologists differently, and that the percentage of revenues generated and retained by the general dermatologist employees varied according to their production of pathology specimen referrals to Nelson Dermatopathology.

22.     Under this system, the dermatologist does not perform the pathology services, but receives compensation for the referral of those services based on the volume and value of referrals for those services.

23.     Upon information and belief, Family Derm operates all of its locations in that same way.

24.     Those incentive payments are a kickback for the referral of pathology specimens to the lab also owned by Defendants.

25.     Relator refused to enter into an agreement with Family Derm.

26.     Family Derm also provides kickbacks to dermatologists for pathology lab referrals in other ways.

27.     Adesokan also owns Databased, which is a company that provides Electronic Medical Record ("EMR") software to dermatologists regardless of the dermatologists' affiliation with Family Derm.

28.     The dermatologists purchase the software and then pay a subscription fee for the EMR services.

29.     Defendant Databased then uses its access to the dermatologists' medical records to assess where each dermatologist refers his/her pathology lab services.

30.     If Defendant Databased's access to a dermatologist's EMR shows that the dermatologist sends a certain percentage of their pathology lab referrals to Nelson Dermatology & Pathology Laboratory, then the dermatologist continues to receive the standard rate for subscription services.

31.     However, if the dermatologist fails to send enough referrals to Nelson Dermatopathology & Laboratory, then Defendant Databased substantially raises its subscription rate for that dermatologist to continue using its software.

32.     In addition, when Defendant Databased determines that a dermatologist is not referring enough pathology lab services to defendants, then

Defendant Adesokan personally visits the dermatologist's office to "encourage" the dermatologist to use Nelson Dermatopathology & Laboratory.

33.     For example, Dr. Gregory Cox, a Georgia dermatologist, had his Databased rates substantially increased for failing to refer enough pathology lab services to defendants.

34.     Other dermatologists have received increases of their Databased rates, similar to those experienced by Dr. Cox.

35.     In other words, defendants provided a substantial discount on its EMR product to dermatologists who made substantial referrals to the defendants' laboratory.

36.     Further, in spring 2007, when Adesokan was seeking to purchase Relator's practice, Relator toured defendants' facility at 755 Mount Vernon Highway, Atlanta, Georgia.

37.     During that tour, Relator observed that the laboratory room at the facility appeared to contain approximately six microscope stations.

38.     Upon information and belief, there are only three M.D. dermatopathologists that sign off on all of the dermatopathology reports generated by Nelson Dermatopathology labs.

39.     Upon information and belief, all 53 Family Derm dermatology practices send pathology lab specimens to Nelson Dermatopathology labs.

40.    Upon information and belief, several outside practices that subscribe to the Databased EMR software also send pathology lab specimens to Nelson Dermatopathology labs.

41.    The volume of pathology lab referrals that Nelson Dermatopathology processes is not consistent with the volume that could be adequately handled by only three dermatopathologists.

42.    Based on Relator's experience, a substantial portion of dermatopathology laboratory services are billed to Medicare and some are also billed to Medicaid.

## REGULATORY FRAMEWORK

43.    Relator brings this *qui tam* action in the name of the United States of America and the State of Georgia against the defendants, jointly and severally. This is an action pursuant to the False Claims Act, 31 U.S.C. §3729 *et seq.* ("FCA") to recover damages and civil penalties for false statements and claims that defendants made or presented to the United States and the State of Georgia. The violations arise out of defendants' requests for payment by Medicare and Medicaid and to the federal and state health care programs (hereinafter, the "Government" – which includes the State of Georgia) based on false claims for dermatology and dermatologic pathology laboratory services. The false claims arise out of violation of anti-kickback laws, as more fully set forth below.

44.   By falsely billing, as set forth in this Complaint, the defendants knowingly caused the Government to pay defendants more than it would have had defendants followed the proper billing procedures.

45.   Realtors bring this action for violations of the FCA on behalf of themselves and the United States of America pursuant to 31 U.S.C. § 3730(b)(1) and the State of Georgia pursuant to the Georgia State False Medicaid Claims Act pursuant to Ga. Code Ann. §§ 49-4-168 *et seq.* (hereinafter, the "Acts").

46.   As required by the Acts, Relators have provided to the Attorney General of the United States, the United States Attorney for the Northern District of Georgia and the Attorney General of the State of Georgia, simultaneous with the filing of the Complaint, a statement of all material evidence and information related to the Complaint. This disclosure statement is supported by material evidence known to plaintiff at this filing establishing the existence of defendants' false claims.

47.   The federal False Claims Act provides that those who knowingly and willfully make or cause to be made any false statement or representation of a material fact in any application for any benefit or payment from the federal government is liable for a civil penalty of not less than $5,500 and not more than $11,000 per occurrence, plus three times the amount of damages which the federal government sustains because of those acts. 31 U.S.C. § 3729(a).

48.    The Medicare Program is a health insurance program for individuals 65 years and older, certain disabled individuals under age 65, and people of any age who have permanent kidney failure.  The Medicare statute is codified at 42 U.S.C. § 1395 (Title XVIII of Social Security Act, 42 U.S.C. § 483.1 *et seq.*).

49.    The Medicaid Program is a joint federal-state program funded under Title XIX of the Social Security Act.  42 U.S.C. § 1396 *et seq.*  As a prerequisite to enrollment as a provider in the Medicaid Program, individuals are required to enter into provider agreements and agree, among other things, to comply with federal and requirements as a condition of federal and state funding.  42 U.S.C. § 1396a(w).

50.    In 1972, Congress enacted the federal health care Anti-Kickback Statute, 42 U.S.C. § 1320a-7b *et seq.*, which prohibited payments, directly or indirectly designed to induce a person to refer or recommend services that may be paid for by federal government.

51.    The federal health care Anti-Kickback Statute provides that those who knowingly and willfully solicit or receive, offer, or pay anything of value, whether directly or indirectly, in exchange for or to induce the referral of items or services for which a federal health care program may make payment shall be guilty of a felony. 42 U.S.C. § 1320a-7b(b)(1).

52.    As a condition of participation in the Medicare program and as a condition precedent to the receipt of payment or reimbursement from Medicare of

10

costs incurred for treating and providing care to Medicare beneficiaries, Defendants certified that they were familiar with the laws and regulations regarding the provision of healthcare services, and that the services were provided in compliance with Medicare laws and regulations.

53.     The Defendants knowingly and intentionally planned and initiated the above-described scheme to circumvent and violate healthcare regulations and obtain and/or inflate payments from the Government that the Government, but for the false statements, would not have paid.   This fraudulent maximization of Government reimbursement resulted in higher income, salary, bonuses and other payments to each defendant. The above-listed knowing and/or reckless violations of the False Claims Act and Anti-Kickback Statute rendered Defendants out of compliance with both Medicare and Medicaid, and ineligible to receive Medicare and/or Medicaid reimbursements for services.

54.     Accordingly, all reimbursement claims submitted to Medicare and/or Medicaid were improper and fraudulent.

## COUNT I

### False Claims Act - Presentation of False Claims

55.     Relators re-allege and incorporate paragraphs 1 - 54 of this Complaint as if fully set forth herein.

56.    In performing the acts described above, Defendants through their own acts or through the acts of their officers, knowingly and/or recklessly presented, or caused to be presented, to an officer or employee of the United States Government, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1).

57.    The United States, unaware of the foregoing circumstances and conduct of the Defendants, made full payments, which resulted in its being damaged in an amount to be determined.

## COUNT II

### False Claims Act - False Statements

58.    Relators re-allege and incorporate paragraphs 1 - 54 of this Complaint as if fully set forth herein.

59.    In performing the acts described above, Defendants through their own acts or through the acts of their officers, knowingly made, used or caused to be made or used, a false record or statements to get false or fraudulent claims paid or approved by the Government in violation of 31 U.S.C. §3729(a)(2).

60.    The United States, unaware of the foregoing circumstances and conduct of the Defendants, made full payments which resulted in its being damaged in an amount to be determined.

## COUNT III

### Reverse False Claims

61.     Relators re-allege and incorporate paragraphs 1 - 54 of this Complaint as if fully set forth herein.

62.     In performing the acts described above, Defendants knowingly used false records and statements to conceal the obligation to reimburse the federal Government and the State of Georgia for monies improperly retained, in violation of 31 U.S.C. §3729(a)(7).

63.     Through Defendants' actions of improperly retaining funds to which they are not entitled, the United States has been deprived of the use of these monies and is entitled to damages in an amount to be determined.

## COUNT IV

### Georgia State False Medicaid Claims Act - Presentation of False Claims

64.     Relators re-allege and incorporate paragraphs 1 - 54 of this Complaint as if fully set forth herein.

65.     In performing the acts described above, Defendants, through their own actions or through the acts of their officers, knowingly presented, or caused to be presented, to an officer or employee of the State of Georgia, a false claim under the Georgia State False Medicaid Claims Act in violation of Ga. Code Ann. §§ 49-4-168 *et seq.*

## **PRAYER FOR RELIEF**

WHEREFORE, Relators respectfully request that this Court enter judgment against Defendants as follows:

a.  That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims and fraud alleged in this Complaint, as the Civil False Claims Act, 31 U.S.C. § 3729 et seq. provides;

b.  That civil penalties of $5,500 to $11,000 be imposed for each and every false claim that the Defendants caused to be presented to the United States;

c.  That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which Relators necessarily incurred in bringing and pressing this case;

d.  That Relators be awarded the maximum amount allowed pursuant to the False Claims Act;

e.  That the State of Georgia be awarded damages as the Georgia State Medicaid False Claims Act provides;

f.  That Relators be awarded the maximum amount allowed pursuant to the Georgia State Medicaid False Claims Act; and,

g.  That this Court award such other and further relief as it deems proper.

14

## DEMAND FOR A JURY TRIAL

Relators demand a jury trial on all claims alleged herein.

Respectfully submitted,

BOONE & STONE

By: _____
David Wm. Bone
Ga. Bar No. 067730
Simone R. Siex
Ga. Bar No. 645858
Ryals D. Stone
Ga. Bar No. 831761

3525 Piedmont Road, NE
Eight Piedmont Center, Suite 200
Atlanta, GA  30305
(404) 239-0305

P.O. Drawer 70
Blakely, Georgia  39823
(229) 723-3045

William S. Stone
Ga. Bar No. 684636

*Of Counsel:*
Monica P Navarro (P52985)
Louis C. Szura (P71763)
Frank Haron Weiner
mnavarro@fhwnlaw.com
lszura@fhwnlaw.com

5435 Corporate Drive, Ste. 225
Troy, MI  48098-2624
(248) 592-0400

**Attorneys for Relator**